# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

PETER D. PETROSKY,

    *Petitioner*,

vs.

JACK PALMER,

    *Respondent*.

3:10-cv-00361-RCJ-WGC

ORDER

This represented habeas matter comes before the Court on its *sua sponte* inquiry into whether the petition, as amended, is subject to dismissal without prejudice as a mixed petition. This order follows upon the prior show-cause order (#19) and the responses (## 21, 23 & 24) thereto by petitioner and respondents. While the parties disagree as to the extent to which the counseled amended petition is unexhausted, there is no dispute that the amended petition is not fully exhausted at this juncture. The principal dispute in the show-cause briefing is directed to petitioner's request for a stay of the federal proceedings while he completes currently-pending proceedings on a second state post-conviction petition.

### *Background*

Petitioner Peter Petrosky seeks to set aside his December 4, 2008, Nevada state conviction, pursuant to a guilty plea, of two counts of lewdness with a child under fourteen years of age.

Petitioner did not file a direct appeal. However, he challenged the conviction and/or sentence via, *inter alia*, a timely first state post-conviction that was mailed for filing on or about March 16, 2009, and filed on March 23, 2009.

According to the verified allegations of the amended petition, petitioner made repeated requests for his file from former defense counsel during the first year following his conviction.[1]

By a written order first filed on August 21, 2009, the state district court denied the petition. Petitioner timely appealed on September 2, 2009.[2]

According to the verified allegations of the amended petition and corroborating evidence, petitioner received the file from defense counsel on November 13, 2009.[3] Petitioner's appeal from the denial of the March 2009 state petition was pending at that time.

Less than three weeks after receipt of the defense file, on or about November 30, 2009, petitioner mailed a second state petition to the state district court clerk for filing. The second petition was filed on December 2, 2009, which was just two days shy of one year from the judgment of conviction, such that the petition was timely only by that slim margin.[4]

The second petition included claims maintaining that petitioner's plea should be set aside because the defense file contained allegedly exculpatory materials that defense counsel did not reveal to petitioner prior to his plea.[5]

On May 18, 2010, the Supreme Court of Nevada affirmed the denial of the first petition. The remittitur issued on June 4, 2010.[6]

Following upon the state supreme court's affirmance, on or about June 1, 2010, petitioner mailed the federal petition to the Clerk of this Court for filing. On August 3, 2010, the Court appointed counsel for petitioner, and petitioner filed a counseled amended petition on February 23, 2011. ## 1, 6 & 13.

---

[1] E.g., #13, at 9. Petitioner alleges that he ultimately received the file on November 13, 2009, after requesting the file "for the better part of the year." The state court record contains multiple filings by petitioner during this period in which he sought to obtain the defense file. See ##15-16, Exhs. 24, 28, 31 & 41.

[2] #15, Exhs. 37, 39 & 40.

[3] #13, at 5 & 9; #16, Ex. 42, Exhibit 3 thereto (prison legal mail log).

[4] #16, Exhs. 43-46.

[5] See, e.g., #16, Ex. 43, at electronic docketing pages 10-14 & 21-29.

[6] #16, Exhs. 53-54.

1      Meanwhile, there had been no action taken on the second state petition and the file 2 apparently had been closed after the affirmance of the denial of the first petition. On March 3 3, 2011, less than two weeks after the filing of the amended federal petition, petitioner, filed 4 in the state district court a motion to reopen and a supplemental petition expanding on the 5 second-petition claims filed previously by petitioner.[7]

6      The State thereafter sought to dismiss the second petition as, *inter alia*, successive.[8]

7      On February 27, 2012, the state district court ordered an evidentiary hearing on 8 selected claims from the second petition and supplemental petition. The district court 9 expressly found, as to such claims, "that NRS 34.810(2) is not a bar in this instance because 10 of the information that eventually surfaced out of the police reports which information was not 11 made available to the defendant at the time," such that petitioner had demonstrated good 12 cause for the failure to raise the claims previously.[9]

13      The parties thereafter submitted an application for setting of the evidentiary hearing for 14 June 7, 2012.[10]

### *Discussion*

16      In order to obtain a stay under *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 161 17 L.Ed.2d 440 (2005), to return to the state courts to exhaust a claim or claims, a petitioner must 18 demonstrate that there was good cause for the failure to exhaust the claims, that the 19 unexhausted claims include at least one claim that is not plainly meritless, and that petitioner 20 has not engaged in intentionally dilatory litigation tactics. *See* 544 U.S. at 278, 125 S.Ct. 21 1535. Respondents challenge only whether petitioner has demonstrated good cause under 22 *Rhines* in opposing his request for a stay.

---

[7] See #22, Exhs. 58 & 59. It appears that the state district court in question takes no action on filings unless and until formally submitted. See #22, Ex. 66, at 2 n.1.

[8] See #22, Ex. 68.

[9] #22, Ex. 71, at 2.

[10] #22, Ex. 72.

-3-

1   The precise contours of what constitutes "good cause" in this context remain to be fully
2  developed in the jurisprudence.
3   On the one hand, the Ninth Circuit has held that a requirement that the petitioner show
4  "extraordinary circumstances" to obtain a stay does not comport with the good cause standard
5  in *Rhines*. *See Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005).
6   On the other hand, *Rhines* instructs that a stay should be available only in "limited
7  circumstances," and the requirement of good cause therefore should not be interpreted in a
8  manner that would render stay orders routine. *Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th
9  Cir. 2008). Accordingly, a mere impression by a petitioner that a claim was exhausted is not
10 sufficient to establish good cause for a failure to exhaust, given that, if it were, "virtually every
11 habeas petitioner, at least those represented by counsel, could argue that he *thought* his
12 counsel had raised an unexhausted claim and secure a stay." *Id.* (emphasis in original).
13  Respondents acknowledge the holding in *Jackson* that extraordinary circumstances are
14 not required but maintain that *Wooten* requires "the petitioner to establish more than ordinary
15 or routine circumstances to justify a stay."[11] Respondents are correct to the extent that the
16 holding and lesson of *Wooten* is that the *Rhines* good-cause requirement should not be
17 interpreted in a manner that renders stay orders routine, such as in the situation where a
18 petitioner merely makes a self-serving declaration that he "thought" his counsel had exhausted
19 the claim. However, it remains established Circuit law under *Jackson*, which explicitly applied
20 the *Rhines* good-cause standard, that good cause does not require extraordinary
21 circumstances. As respondents are aware, "extraordinary circumstances" is a term of art
22 drawn from habeas equitable tolling case law. The Court is not necessarily sanguine that
23 parsing semantically between "more than ordinary" as opposed to "extraordinary" would
24 contribute anything analytically meaningful in applying the good-cause standard.
25  The Court is reluctant to import standards either from equitable tolling or procedural
26 default case law that are designed to assess whether a petition or claim should be dismissed

---

28   [11] #23, at 6.

with prejudice, *i.e.*, with conclusive finality, and which on occasion may require an evidentiary hearing. Arguably, such heightened standards – directed to the question of whether, in the final analysis, a claim is conclusively procedurally barred – are inappropriate for the preliminary procedural question of whether a stay should be entered while petitioner fully exhausts claims in a mixed petition. It generally is more appropriate for the state courts to have the opportunity in the first instance to consider the application of conclusive procedural bars. *Cf. Gonzalez v. Wong*, 667 F.3d 965, 980 (9th Cir. 2011)(noting appropriateness, in the circumstances presented, of a stay as it provided the state court with the first opportunity to resolve the claim). The Court – most certainly – is not sanguine that it should adopt jurisprudential standards that potentially could require an evidentiary hearing to resolve the preliminary procedural issue presented by a request for a stay.

If the bar that must be cleared under *Rhines* were as high as that required to establish either equitable tolling or cause-and-prejudice, the Supreme Court and the Ninth Circuit know quite well how to invoke such established standards. To date, neither has done so. The Ninth Circuit instead has stated to the contrary in *Jackson* that an "extraordinary circumstances" standard does not comport with the *Rhines* good-cause standard.

In the present case, petitioner is not seeking to establish good cause based on a mere impression that counsel was seeking to exhaust a claim.

Nor is he seeking to establish good cause merely on the basis that state post-conviction counsel on the first petition overlooked or opted not to pursue a claim.[12]

Rather, petitioner is seeking to establish good cause based upon his previously not having information contained in the defense file despite repeated efforts to obtain the file from former defense counsel. In this sense, as a state post-conviction litigant seeking to pursue claims of, *inter alia*, ineffective assistance of his former defense counsel, the failure of former counsel to turn over the file sooner is an impediment external to petitioner's post-conviction

---

[12]*But cf. Martinez v. Ryan*, 132 S.Ct. 1309 (2012)(inadequate assistance of counsel in initial-review state collateral proceedings may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel).

-5-

1 litigation effort.  His former counsel no longer is his agent, and his former counsel's interests
2 not only are not aligned with his interests but indeed are adverse to his interests vis-à-vis a
3 claim of ineffective assistance of counsel.  The incarcerated petitioner certainly had no control
4 over the matter of obtaining the file, which he had to request repeatedly by letter and through
5 judicial proceedings.

6       In this regard, the Court is not persuaded by respondents' suggestion that petitioner has
7 failed to demonstrate good cause because he allegedly has not explicitly declared "that he
8 never reviewed or had access to the police reports before receiving the file" from former
9 defense counsel.[13]  In the verified petition, however, petitioner alleges that former defense
10 counsel "had received discovery for these offenses consisting of numerous police reports, but
11 he did not provide Petrosky with any of this information."[14]  It is not clear to the Court exactly
12 what further verified allegation or declaration respondents would require that a petitioner must
13 make in this context.  Moreover, the state district court has made an at least preliminary factual
14 finding that "the information that eventually surfaced out of the police reports . . . was not made
15 available to the defendant at the time."  This situation would appear to be an instance of
16 "sauce for the goose," given the deference accorded to state court factual findings.

17       Nor is the Court persuaded by respondents' argument that petitioner "could have
18 included all of his unexhausted claims in his first state habeas petition if he had simply waited
19 until he received the file from Attorney Edwards, as demonstrated by his timely filing of these
20 claims in his second state habeas petition."[15]  Respondents' argument glosses over the fact
21 that the second state petition was filed on December 2, 2009, just *two days* before the
22 expiration of the one-year state limitations period.  The *Rhines* good-cause requirement most
23 assuredly does not require that an incarcerated petitioner demonstrate the both prescience
24 and daring that respondents' argument would entail.  Petrosky would have had to sit idly by

---

[13] #23, at 7.

[14] #13, at 8.

[15] #23, at 7.

-6-

1  – with both the state and federal one-year limitation periods running – fully secure in what
2  would have been the most extraordinary prescience that on November 13, 2009, his repeated
3  requests for the defense file finally would be honored, with only 21 days then remaining in the
4  state limitations period.  He then would have had to essentially gamble on: (a) being able to
5  prepare and mail a state petition to the state court clerk for *filing* on or before December 4,
6  2009;[16] and (b) thereafter being able to timely mail a federal petition for filing within the then
7  only a month or possibly less remaining in the federal limitation period after, hopefully,
8  receiving sufficiently timely notice of the final action of the state supreme court through either
9  counsel if appointed or prison mail.  There would be virtually no margin for error, with any, for
10 example, unusual but not wholly uncommon mailing delay or delays then resulting in likely both
11 his state and federal petitions being rendered untimely.[17]  AEDPA requires diligence, not such
12 prescience and daring do.

13      Petitioner pursued his rights diligently, additionally persistently sought production of the
14 defense file, and then moved with considerable dispatch after finally receiving the file.  He
15 further acted reasonably in proceeding to federal court without waiting for the conclusion of
16 the proceedings on the second state petition.  In those still-ongoing proceedings, regardless
17 of the initial disposition of the state district court following the evidentiary hearing, it remains
18 possible that: (a) the Supreme Court of Nevada could hold on appeal that the second petition

---

[16]The state supreme court has held that the prison mailbox rule does not apply to determine the timeliness of a state post-conviction petition under Nevada state law.  *Gonzales v. State*, 118 Nev. 590, 53 P.3d 901 (2002).  The state one-year period runs in this context from the date of conviction whereas the federal one-year period instead runs from the expiration of the appeal period one month later.  The record presented reflects that petitioner tendered the second state petition to the prison law library for mailing on or about November 30, 2009, and that it thereafter was received and then filed by the state district court clerk on Wednesday, December 2, 2009.  Just an additional three days of mailing and/or other delay – in the prison mail room, the postal service and/or possibly the clerk's office  – would have resulted in the petition instead being untimely *filed* by the clerk instead on Monday, December 7, 2009.  That is a quite slim margin for error.

[17]Given that an untimely state petition does not statutorily toll the federal limitation period, any last-minute glitch rendering a state petition untimely very easily can result in the federal petition also being untimely.  The petitioner would have to learn promptly of the glitch in the state court filing and then quickly file, with no further glitches, his federal petition within the minimal time remaining.  He then would face a likely procedural default defense to all of his claims.  Waiting until after November 13, 2009, to file a first state petition thus would have entailed significant risk even if, *arguendo*, Petrosky had the requisite prescience in the first instance to know beforehand that he finally would receive the defense file that date.

1  is wholly barred as a successive petition; and (b) either the United States Supreme Court or
2  the Ninth Circuit could hold that such a successive petition is not "properly filed" for purposes
3  of statutory tolling of the federal one-year limitation period under 28 U.S.C. § 2244(d)(2).[18]
4  The Supreme Court clearly has instructed that a habeas petitioner is not required to take such
5  a gamble over whether a second petition will be deemed "properly filed" and that he instead
6  may file a protective federal petition that indisputably will be timely, while seeking a *Rhines*
7  stay. *See Pace v. DiGuglielmo*, 544 U.S. 408, 416-17, 125 S.Ct. 1807, 1813-14, 161 L.Ed.2d
8  669 (2005). Such a protective filing is precisely what petitioner has done here.

9  The Court accordingly finds that petitioner has demonstrated good cause under
10 *Rhines*.

11 While respondents have not directly challenged the remaining two *Rhines* factors, the
12 Court additionally finds that petitioner has presented at least one claim that is not plainly
13 meritless and that he has not engaged in intentionally dilatory litigation tactics.

14 With particular regard to whether petitioner has presented at least one claim that is not
15 plainly meritless, the *Rhines* Court made a comparison cite to 28 U.S.C. § 2254(b)(2) with
16 regard to this inquiry. 544 U.S. at 277, 125 S.Ct. at 1535. The Ninth Circuit has held that a
17 district court may reject an unexhausted claim on the merits pursuant to § 2254(b)(2) "only
18 when it is perfectly clear that the applicant does not raise even a colorable federal claim."
19 *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005). Federal Ground 1(a), certainly clears
20 this quite low bar. Petitioner alleges therein that he was denied effective assistance of counsel
21 because, *inter alia*, defense counsel allegedly grossly misrepresented the strength of the
22 State's case to him prior to his plea, failing to reveal to him the allegedly exculpatory
23 information included in the police reports.[19] Ground 1(a) clearly raises an at least colorable
24 federal claim. The Court accordingly need not reach any question as to the relative merit of

---

26 [18] *Cf. Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010)(stating in what perhaps may be *dicta* – given
   the actual disposition in the supporting case cited – that for statutory tolling "the petition cannot be untimely or
27 an improper successive petition").

28 [19] See #13, at 8-11.

-8-

the remaining unexhausted claims. The pertinent inquiry is whether the federal district court should enter a stay, and the Court need find the presence of only one claim that is not plainly meritless for that limited purpose. The Court need not engage in an inquiry analogous to certifying claims for a certificate of appealability. What claims petitioner pursues during the stay and brings back before the Court is a matter to be determined by petitioner, subject to any then-applicable defenses once the federal case is reopened.[20]

Nothing in the record before the Court reflects that petitioner has engaged in intentionally dilatory tactics. While it perhaps is not utterly inconceivable that a noncapital habeas petitioner might engage in intentionally dilatory tactics, the relevance of this factor, as a practical matter, largely is restricted to capital cases.[21]

Following consideration of the *Rhines* factors, petitioner's request for a stay accordingly will be granted.

The Court expresses no opinion -- by this order -- as to whether the circumstances presented satisfy the cause-and-prejudice standard with respect to any claim of procedural default. The holding herein should not be read as an express or implied holding on this issue or any other issue. The Court holds here only that the criteria for a stay under *Rhines* have been satisfied, and its holding in this order is expressly limited to that specific context.

IT THEREFORE IS ORDERED that this action is STAYED pending exhaustion of petitioner's unexhausted claims. Petitioner may move to reopen the matter following exhaustion of the claims, and any party otherwise may move to reopen the matter at any time and seek any relief appropriate under the circumstances.

---

[20] And, of course, the likelihood of a second stay would be remote should petitioner then present unexhausted claims following the stay, absent unusual circumstances.

[21] *Cf. Lawrence v. Florida*, 549 U.S. 327, 344 & n. 9, 127 S.Ct. 1079, 1090 & n.9, 166 L.Ed.2d 924 (2007)(Ginsburg, J., dissenting)("Most prisoners want to be released from custody as soon as possible, not to prolong their incarceration. They are therefore interested in the expeditious resolution of their claims. . . . . Though capital petitioners may be aided by delay, they are a small minority of all petitioners."); *Valdovinos v. McGrath*, 598 F.3d 568, 574 (9th Cir. 2010), *vacated for reconsideration on other grounds*, 131 S.Ct. 1042 (Jan. 24, 2011)(petitioner "had not engaged in dilatory tactics and he had no motivation for delay, as he is not a capital defendant").

IT FURTHER IS ORDERED that, taking into account that state post-conviction proceedings already have been commenced, the grant of a stay is conditioned upon petitioner returning to federal court with a motion to reopen within forty-five (45) days of issuance of the remittitur by the Supreme Court of Nevada at the conclusion of all state court proceedings.[22]

IT FURTHER IS ORDERED that, with any motion to reopen filed following completion of all state court proceedings pursued, petitioner: (a) shall attach an indexed chronological set of exhibits (with the corresponding CM/ECF attachments identified by exhibit number(s) on the docketing system) containing the state court record materials relevant to the issues herein that cover the period between the state court record exhibits on file in this matter and the motion to reopen; and (b) if petitioner then intends to further amend the petition, shall file a motion for leave to amend along with the proposed verified amended petition or a motion for extension of time to move for leave.[23]  Respondents shall have thirty (30) days to file a response to the motion or motions filed.  The reopened matter will proceed under the current docket number.

IT FURTHER IS ORDERED that the Clerk of Court shall ADMINISTRATIVELY CLOSE this action until such time as the Court grants a motion to reopen the matter.

DATED: This 16th day of September, 2013.

_____
ROBERT C. JONES
Chief United States District Judge

---

[22] If *certiorari* review will be sought or thereafter is being sought, either party may move to reinstate the stay for the duration of any such proceedings. *Cf. Lawrence v. Florida*, 549 U.S. 327, 335, 127 S.Ct. 1079, 1084, 166 L.Ed.2d 924 (2007).

[23] No claims in the current pleadings are dismissed by this order.