# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

PETER D. PETROSKY,

    Petitioner,

v.

JACK PALMER, et al.,

    Respondents.

Case No. 3:10-cv-00361-RCJ-WGC

ORDER

Petitioner Peter D. Petrosky's counseled, second-amended 28 U.S.C. § 2254 habeas petition comes before the court for disposition on the merits (ECF No. 42).

**I.**     Procedural History and Background

As set forth in this court's order denying respondents' motion to dismiss, on October 16, 2008, Petrosky pleaded guilty to two counts of lewdness with a child under the age of fourteen years (exhibit 18 to second-amended petition, ECF No. 42).[1]  The state district court sentenced him to two consecutive terms of ten years to life in prison. Exh. 21.

Petrosky did not file a direct appeal. On March 23, 2009, he filed a *pro se* state postconviction petition; the state district court appointed counsel, and counsel filed a supplemental petition on June 3, 2009. Exhs. 25, 29, 32. The state district court dismissed the petition on August 21, 2009. Exh. 37. The Nevada Supreme Court

---

[1] Exhibits referenced in this order are exhibits to the second-amended petition, ECF No. 42, and are found at ECF Nos. 14-16, 22, 28-35, and 38.

1

affirmed the dismissal on May 18, 2010.  Exh. 53.  Meanwhile, Petrosky had filed a second state postconviction petition on December 2, 2009.  Exh. 43.

While the second state postconviction petition was pending, Petrosky dispatched his federal petition for mailing on June 1, 2010 (ECF No. 7).  This court appointed counsel (ECF No. 6).  On September 16, 2013, this court ordered that these proceedings be stayed pending resolution of Petrosky's second state postconviction petition (ECF No. 26).

The state district court held an evidentiary hearing on the second state postconviction petition and denied the petition on May 21, 2013.  Exhs. 77, 83.  On April 10, 2014, the Nevada Supreme Court affirmed the denial of the second state postconviction petition, concluding that the claims were procedurally barred and that Petrosky had failed to demonstrate good cause and actual prejudice to excuse the default.  Exh. 94.  Remitter issued on May 7, 2014.  Exh. 95.

On January 9, 2015, this court granted Petrosky's motions to reopen the case and to file a second-amended petition (ECF No. 40).  Respondents have answered the second-amended petition (ECF No. 62), and Petrosky replied (ECF No. 63).

**II.**     Legal Standards

a.     Antiterrorism and Effective Death Penalty Act (AEDPA)

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

2

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181. Finally, in conducting an AEDPA analysis, this court looks to the last reasoned state-court decision. *Murray v. Shriro*, 745 F.3d 984, 996 (9th Cir. 2014).

**b.     Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that

4

counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*.

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look

5

at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*. at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id*. at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id*. (internal quotations and citations omitted).

### c. Procedural Default

"Procedural default" refers to the situation where a petitioner in fact presented a claim to the state courts but the state courts disposed of the claim on procedural grounds, instead of on the merits. A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).

The *Coleman* Court explained the effect of a procedural default:

6

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986). The procedural default doctrine ensures that the state's interest in correcting its own mistakes is respected in all federal habeas cases. *See Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th Cir. 2003).

To demonstrate cause for a procedural default, the petitioner must be able to "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488 (emphasis added). For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

The Court in *Coleman* held that ineffective assistance of counsel in postconviction proceedings does not establish cause for the procedural default of a claim. *Coleman*, 501 U.S. at 750. In *Martinez v. Ryan*, 132 S.Ct. 1309, 1320 (2012), the Court established a "narrow exception" to that rule. The Court explained that

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

132 S.Ct. at 1320.

In *Clabourne v. Ryan*, 745 F.3d 362 (9th Cir. 2014), the Ninth Circuit provided guidelines for applying *Martinez*, summarizing the analysis as follows:

> To demonstrate cause and prejudice sufficient to excuse the procedural default, therefore, *Martinez* . . . require[s] that *Clabourne* make two showings. First, to establish "cause," he must establish that his counsel in the state postconviction proceeding was ineffective under the standards of *Strickland* [*v. Washington*, 466 U.S. 668 (1984)]. *Strickland*, in turn, requires him to establish that both (a) postconviction counsel's

performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the postconviction proceedings would have been different. Second, to establish "prejudice," he must establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."

*Clabourne*, 745 F.3d at 377 (citations omitted).

**I.   Instant Petition**

In their motion to dismiss, respondents argued that most subparts of ground 1, as well as ground 2 in its entirety, should be dismissed as procedurally barred (ECF No. 48, pp. 6-7). Except for one subpart of ground 1(B)(4) and ground 1(B)(5)—which will be addressed on the merits—the grounds set forth below were presented to the Nevada Supreme Court for the first time in Petrosky's appeal of the denial of his second state postconviction petition. Exh. 89. Thus, they are procedurally defaulted (*see* ECF No. 57; exh. 94). Petrosky argues, however, that the state procedural default should not bar his federal claims because he can show cause and prejudice to excuse the default (ECF Nos. 52, 63). Petrosky contends that his state postconviction counsel was ineffective, and therefore, under *Martinez,* the procedural default of these grounds should be excused. *Id*.

**Ground 1(B)(1)**

Petrosky contends that his counsel rendered ineffective assistance in violation of his Sixth and Fourteenth Amendment rights because his representations about the plea deal were "grossly unprofessional" (ECF No. 42, p. 14). Petrosky alleges that his counsel failed to meaningfully inform him about his case and forced Petrosky into making a decision without further investigation of the case or adequate time to consider the offer. *Id*.

Petrosky testified at the evidentiary hearing on his second state postconviction petition. Exh. 77, pp. 10- 98. He testified that his plea counsel, Scott Edwards, specifically advised Petrosky to take the plea deal. *Id*. at 23. Petrosky stated that Edwards told him that "hopefully" the court would sentence him to two concurrent terms,

8

not consecutive. *Id*. at 33. He testified that he thought the sentences "probably" would be run concurrently. *Id*. at 34. On direct, Petrosky first stated "I think [Edwards] did give me some police reports or something" and also that he never saw any of the police reports. *Id*. at 25, 50. He stated that the alleged child victims had told him that they had been interviewed by police. He said that he learned from the children that they did not cooperate initially with the police. *Id*. at 59, 88-90. In response to his counsel asking if he asked Edwards to file a direct appeal, Petrosky said that he thought he asked Edwards to file a direct appeal, but then he also said that no one even told him about a direct appeal. *Id*. at 66.

On cross examination, Petrosky testified that Edwards gave him a few things to read when he was considering the plea deal, including an incident report or a police report. Petrosky stated that he did not read the documents because he relied on Edwards. *Id*. at 75-76. He testified that Edwards told him that the state district court might run the sentences consecutively or concurrently. *Id*. at 85. On cross examination, Petrosky was unable to state specifically what it was that was in the discovery file that he did not know prior to pleading guilty. On redirect, Petrosky testified that, prior to pleading guilty, he did not know how many interviews of the children took place, what the specific questions and answers were, how long police officers talked with the children before the children began to make accusations, and that the police officers told the children things that were untrue about the case. *Id*. at 90-95.

Petrosky's plea counsel Scott Edwards also testified. Exh. 77, pp. 102-140. He testified that he discussed what the children said in the interviews and asked Petrosky how he would respond. He stated that he discussed the pros and cons of the plea agreement and of going to trial and that he did not push very hard one way or the other. He noted that Petrosky had a prior conviction for a sex offense and that he thus faced a possibility of a sentence of life without the possibility of parole. Edwards testified that he and Petrosky discussed what trial would entail, including witnesses, and Petrosky was

9

adamant about not going to trial. Edwards stated that Petrosky was unhappy with the plea offer and did not want to go to trial, and really wanted Edwards to figure out a third option, which Edwards was unable to offer. *Id*. at 105-107. He stated that he read the police reports to Petrosky prior to the decision to plead guilty, going through page by page, sometimes paraphrasing, sometimes verbatim. *Id*. at 111, 136. Edwards testified that in his view, if the witnesses testified consistently with their statements to the police, it was likely that Petrosky would be convicted of one or more of the nine counts and that, overall, he deemed it more likely than not that Petrosky would be convicted at trial of one or more counts. He stated that he told Petrosky that he would argue for concurrent sentences, but that there were some factors that were not in Petrosky's favor, including a prior sex offense conviction and that there were two alleged victims in this case. *Id*. at 129-132.

The state district court denied the second state postconviction petition. Ex. 83. The court found that Petrosky's testimony was not credible and that Edwards testified credibly. *Id*. at 4-6. The court found specifically:

> [Petrosky] asserted that counsel grossly mis-characterized the strength of the prosecutor's case. Petrosky failed to show exactly how it was characterized at all, beyond responding to counsel's suggestions that perhaps Edwards had said that prevailing at trial was not likely. Petrosky himself seemed inclined to advance the theory that Edwards had not given any advice at all, and did not credibly testify that Edwards had given a grossly inaccurate evaluation of the likelihood of prevailing at trial. At page 75 of the transcript of the habeas corpus hearing, Petrosky testified that Edwards had not voiced any opinions about the strength of the evidence. At page 81 he unequivocally denied that Edwards had voiced any opinion at all about the strength of the evidence, only seconds after swearing that Edwards had voiced the opinion that "it looks bad."
>
> Petrosky wavered on other points as well, and that affected his credibility. At various times he claimed that Edwards had not shown him any reports, and at other times he claimed that Edwards showed him reports but that he declined to read them, and at other times he claims he read some things but could not be certain of what he had read and what he had not.
> . . . .

> Edwards also testified in the habeas corpus hearing. He testified credibly that he and his client had rather extensive discussions concerning the evidence, including the fact that the child-witnesses were initially not willing to incriminate Petrosky.
>
> The court finds, based on the testimony, that there was no incorrect assessment of the evidence, and certainly no assessment that fell below any objective standard. Assuming that there is some objective standard for the evaluation of the strength of the prosecutor's case, the court is not persuaded that the performance of counsel fell below that standard.

*Id*. at 4-5.

Affirming the denial of the second state postconviction petition, the Nevada Supreme Court noted:

> Appellant testified at the evidentiary hearing that he knew, prior to pleading guilty, that the children were reluctant to accuse him because they informed him of that fact after their interviews. Further, trial counsel testified that he discussed the police reports with appellant prior to him pleading guilty. The district court concluded that trial counsel was credible and that appellant was not credible and substantial evidence supports the decision of the district court.

Exh. 94, p. 3.

Petrosky has failed to show that this is a substantial claim of ineffective assistance of counsel. This claim is dismissed as procedurally barred.

**Ground 1(B)(2)**

Petrosky alleges that his counsel was ineffective for failing to discover the audio tapes of the initial interviews of the victims, which were in the State's possession at the time Petrosky entered his plea (ECF No. 42, p. 15). Petrosky argues that the audio tapes revealed the interviewer's coercive questioning. *Id*.

The state district court explained:

> Edwards did not specifically recall listening to every recorded interview of every witness. The court notes that the better practice would be to listen to each interview, if possible, but the court finds that Petrosky has failed to prove prejudice. He failed to prove that if only Edwards had listened to those recordings, that would have changed the advice of Edwards or the decision of Petrosky.

Exh. 83, p. 6.

Again, the Nevada Supreme Court noted that Petrosky testified at the evidentiary hearing that he knew, before he pled guilty, that the children were reluctant to accuse him because they told him that after their interviews. Exh. 94, p. 3.

Petrosky has not established that he would have insisted on going to trial but for Edwards not obtaining the audio tapes; nor has he established that this is a substantial claim of ineffective assistance of counsel. Thus, the claim is dismissed as procedurally defaulted.

**Ground 1(B)(3)**

Petrosky claims that his counsel was ineffective because he grossly misadvised Petrosky about the probability that his sentences would be run concurrently. *Id*. at 15-16.

As set forth above, the state district court held that Petrosky did not testify credibly at the evidentiary hearing when he stated that Edwards assured him that the sentences would be concurrent. Exh. 83. Instead, the portions of the testimony of both Petrosky and Edwards that the court found credible reflected that Edwards expressed hope that the terms would be concurrent, though he noted that Petrosky's prior conviction and the two victims in this case might be factors that the state district court weighed against concurrent terms. *See e.g.*, exh. 77, pp. 33-34.

The state district court further found:

> Petrosky also asserted that counsel induced the plea by assuring Petrosky that he was certain to get concurrent sentences. That claim was untrue. Petrosky himself testified at various times that Edwards had said he "hoped" for concurrent sentences, but there was not credible testimony that Edwards induced the plea by promising concurrent sentences. Our court has held that a "mere subjective belief of a defendant as to potential sentence, or hope of leniency, unsupported by any promise from the State or indication by the court, is insufficient to invalidate a guilty plea as involuntary or unknowing." *Rouse v. State*, 541 P.2d 643, 644 (Nev. 1975).

Exh. 83, p. 5.

Petrosky has not shown that this is a substantial claim of ineffective assistance of counsel. Thus, the claim is dismissed as procedurally defaulted.

**Ground 1(B)(4)**

Petrosky claims that his counsel was ineffective when he failed to investigate or present any mitigating evidence at sentencing (ECF No. 42, p. 16-17). Specifically, Petrosky alleges counsel should have investigated and presented (1) a psychosexual evaluation to the district court at sentencing to address concerns regarding recidivism; (2) background information regarding Petrosky having been abused as a child; and (3) evidence regarding Petrosky's work history and ties to the community. *Id.*

With respect to the claim that Edwards was ineffective for not having a psychosexual evaluation done prior to sentencing, the Nevada Supreme Court affirmed the denial of this claim in Petrosky's first state postconviction petition. Exh. 53, pp. 2-3. Thus, Petrosky must demonstrate that the state supreme court's decision was contrary to or an unreasonable application of clearly established federal law.

In denying this claim, the state district court found that there was no reasonable probability that the court would have run the sentences concurrently rather than consecutively. Exh. 37, p. 5. The court explained: "There is not reasonable probability that the court would have made the sentences concurrent even if a psychiatrist came and testified. The situation which led to the abuse was egregious in the court's mind and the resulting sentence was condign." *Id*.

Affirming the district court's denial, the Nevada Supreme Court reasoned that Petrosky had failed to demonstrate that a psychosexual evaluation would have been favorable. Exh. 53, pp. 2-3. The Nevada Supreme Court concluded: "The district court stated in its order below that a psychosexual evaluation would not have changed his

13

sentencing decision because the decision was based on the nature of the offense and the fact that appellant had previously been convicted of a sexual offense against a child." *Id*. at 2.

Petrosky has presented nothing that demonstrates that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Therefore, Petrosky's claim in ground 1(B)(4) that his counsel was ineffective at sentencing for failing to arrange for a psychosexual evaluation is denied.

The second and third claims in ground 1(B)(4) are that Edwards was ineffective at sentencing for failing to present background information that Petrosky was abused as a child and failing to present evidence regarding Petrosky's work history and ties to the community. Petrosky presented the second and third subparts for the first time in his second state postconviction petition. Exh. 89. Thus, they are procedurally defaulted, absent good cause and actual prejudice to excuse the default.

Respondents point out that Petrosky obviously was aware that he himself had been a victim of sexual abuse, and he had an opportunity to speak at sentencing (ECF No. 62, p. 11). Petrosky acknowledges that there is a reference to his sexual abuse in the presentence investigation report, characterizing it as mentioned "dismissively" (ECF No. 63, p. 17).

Edwards testified at the state postconviction evidentiary hearing that his strategy at sentencing was to argue that, based on Petrosky's age, one life sentence (*i.e.*, concurrent sentences) was enough. Exh. 77, pp. 132-135. The record reflects that

14

Edwards also emphasized Petrosky's remorse. Exh. 22, pp. 4-8. Petrosky was facing trial on nine counts. As the state district court noted, the case had the potential to include other improper acts, including his prior conviction for a sex offense and allegations of improper contact by Petrosky's biological son. *See* exh. 83, p. 6.

The purpose of *Strickland* is not to review counsel's performance to determine if it would have been better for counsel to do something different; the *Strickland* inquiry is whether what counsel actually did was objectively unreasonable. 466 U.S. at 687-91. Moreover, at sentencing the judge specifically questioned whether one possible sentence was life without the possibility parole. Exh. 22, pp. 7-8. The State indicated that the guilty plea agreement was for two counts of lewdness, and therefore, life without the possibility of parole was not an option. *Id*. The court made clear its position that consecutive sentences were appropriate and indeed implied that it would have imposed life without the possibility of parole if that had been an option. *Id*.

Petrosky simply has not shown that there is a reasonable probability of a different outcome at sentencing if Edwards had presented evidence that Petrosky had been sexually abused and of his employment history. Accordingly, these claims in ground 1(B)(4) do not present substantial ineffective assistance of counsel claims and are dismissed as procedurally barred.

**Ground 1(B)(5)**

Petrosky contends that Edwards was ineffective for failing to inform Petrosky of his right to appeal (ECF No. 42, p. 17). The Nevada Supreme Court affirmed the denial of this claim in Petrosky's first state postconviction petition. Exh. 53, p. 3. Thus, Petrosky must demonstrate that the state supreme court's decision was contrary to or an unreasonable application of clearly established federal law.

15

After sentencing, an attorney has a duty to consult with his client about an appeal when there is reason to think that (1) a rational defendant would want to appeal, or (2) the defendant reasonably demonstrated to counsel that he was interested in appealing. *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). In making this determination courts are required to "take into account all the information counsel knew or should have known." *Id*. The Court in *Flores-Ortega* stated that it is highly relevant whether the conviction was pursuant to a trial or a guilty plea, "both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id*.

The Nevada Supreme Court affirmed the denial of this claim in Petrosky's first state postconviction petition. Exh. 53, p. 3 (citing *Flores-Ortega*, 528 U.S. at 479-480). The state supreme court stated that Petrosky failed to demonstrate deficiency because he failed to demonstrate that he requested that Edwards file an appeal and also pointed out that the guilty plea agreement advised Petrosky of his limited right of appeal. *Id.*

Petrosky does not even allege that he would have appealed had Edwards told him he had a right to appeal. *See U.S. v. Sandoval-Lopez*, 409 F.3d 1193, 1196 (9th Cir. 2005). Nor has he demonstrated that he had any nonfrivolous grounds for appeal (*see* ECF No. 42, p. 17). He has not shown that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, ground 1(B)(5) is denied.

**Ground 2**

Petrosky alleges in ground 2 that he did not enter his guilty plea knowingly, intelligently or voluntarily, in violation of his Fifth and Fourteenth Amendment rights (ECF No. 42, p. 18). He argues that under *Martinez* he can show cause and prejudice to excuse the procedural default of this claim (ECF No. 63, pp. 22-24). However, *Martinez* does not extend to this claim. The Court in *Martinez* held that ineffective assistance of state postconviction counsel may provide cause to excuse the procedural default of ineffective assistance of trial counsel claims. However, ground 2 is a substantive or stand-alone claim, it is not a claim of ineffective assistance of trial counsel. Ground 2, therefore, is dismissed as procedurally defaulted.

Moreover, the court notes that, as discussed above in relation to the ineffective assistance of counsel claims, this claim is belied by the record. The record reflects that while Petrosky was unhappy with the proffered plea, he adamantly refused to go to trial. Edwards and Petrosky discussed the evidence against Petrosky in the police reports, the nine counts he would face if he went to trial, the potential effect of his past conviction, and the fact that under the plea agreement the court would have discretion to run the sentences concurrently or consecutively. Thus, ground 2 also lacks merit.

**II.     Certificate of Appealability**

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

Having reviewed its determinations and rulings in adjudicating Petrosky's petition, the court finds that reasonable jurists would not find its determination of any grounds to be debatable pursuant to S*lack*. The court therefore declines to issue a certificate of appealability.

### III. Conclusion

IT IS THEREFORE ORDERED that the second-amended petition (ECF No. 42) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

DATED: 27 September 2017.

ROBERT C. JONES